[No. 18325-7-I.   Division One.   August 24, 1987.]

RON LINDSEY, *Appellant,* v. THE MUNICIPALITY OF METRO-POLITAN SEATTLE, *Defendant,* AMALGAMATED TRANSIT UNION, DIVISION No. 587, *Respondent.*

*M. Scott Dutton,* for appellant.

*Jon H. Rosen, Clifford Freed,* and *Frank & Rosen,* for respondent.

DURHAM, J.*—This case involves the scope of a union's duty of fair representation when it represents one of its members in pursuing an employment grievance. We hold as a matter of law that the union did not breach its duty in this case and we affirm the summary judgment dismissal of the member's complaint against the union.

Ron Lindsey was Municipality of Metropolitan Seattle (Metro) bus driver and a member of Amalgamated Transit Union, Division 587. On March 23, 1984, a co–worker thought he smelled alcohol on Lindsey and reported him to Metro base chief Harold Mann. Mann warned Lindsey that using drugs or alcohol while on duty or before coming to work could result in his termination, but apparently took no other action at that time.

On the morning of March 27, Lindsey spoke on the telephone with Lorraine Laning, a woman with whom he had recently been involved. Laning became alarmed because Lindsey seemed disoriented and his speech was slurred. She then called Mann to tell him that Lindsey might be under the influence of a drug or intoxicant.

Later that day, Mann ordered Lindsey to take a blood and urine test for drugs and alcohol. Mann based this order on his own observations of Lindsey, their prior conversations, and rumors he had heard. The test results in fact were positive for both THC—the active ingredient in marijuana—and Valium.

After a series of meetings between Lindsey, Metro and the union, Metro fired Lindsey on May 1. Metro's reasons

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

for the discharge were Lindsey's prior work record,[1] the test results, and his failure to report the use of a prescription drug (Valium). Under the labor agreement between Metro and the union, "the use of narcotics" by an employee is a major infraction which justifies discharge. A failure to report the use of a prescription, however, is only a minor infraction and in this case does not constitute independent justification for Lindsey's discharge.[2]

On May 3, Lindsey filed a grievance with Metro protesting his dismissal. The union represented Lindsey in pursuing his grievance through the procedures established in the labor agreement. When a grievance involves an employee's discharge, these procedures consist of a "first step" hearing with Metro officials, a "second step" hearing with higher Metro officials and, if still unresolved, arbitration. The labor agreement provides that the union business representative may choose not to pursue the grievance to the second stage if he determines that the grievance is without merit.

Union officers assisted Lindsey in preparing and presenting his grievance to Metro at the "first step" hearing. Metro denied Lindsey's grievance at that hearing. The union officers, including the business representative, then decided to drop Lindsey's grievance rather than to seek a "second step" hearing.

On September 25, 1984, Lindsey filed a complaint in King County Superior Court alleging that Metro breached his contract of employment and that the union breached its duty of fair representation. The trial judge granted summary judgment to the union and denied Lindsey's motion

---

[1] In Lindsey's 5 years of service as a full–time driver prior to the current incident, he was suspended and discharged twice, once for gross misconduct and once for falsifying Metro documents. He was reinstated both times. On a separate occasion he received a suspension that was later voided. In addition to these occurrences, Lindsey was also suspended once, placed on probation once, and reprimanded nine times.

[2] Under the labor agreement, an employee can be discharged for a minor infraction only if he commits three such infractions within 1 year. Lindsey had not committed any minor infractions within the preceding year.

for reconsideration. Lindsey has appealed.[3]

Summary judgment is properly granted only when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. CR 56(c). This court "must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The motion must be granted if reasonable persons cannot differ in concluding that the moving party is entitled to judgment. *Wilson,* at 437; *Nevils v. Aberle,* 46 Wn. App. 344, 346, 730 P.2d 729 (1986).

█ Unions have a duty under state law to fairly represent their members. *Allen v. Seattle Police Officers' Guild,* 100 Wn.2d 361, 371–72, 670 P.2d 246 (1983). This duty is imposed as a necessary corollary to the unions' statutory right to exclusively represent their members.

The duty of fair representation is breached when a union's conduct is discriminatory, arbitrary, or in bad faith. *Allen,* at 375. Opinions from the United States Supreme Court and the Ninth Circuit reach the same conclusion. *See IBEW v. Foust,* 442 U.S. 42, 48, 60 L. Ed. 2d 698, 99 S. Ct. 2121 (1979); *Vaca v. Sipes,* 386 U.S. 171, 190, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967); *Galindo v. Stoody Co.,* 793 F.2d 1502, 1513 (9th Cir. 1986).

Washington case law, however, has not addressed what constitutes discriminatory, arbitrary, or bad faith conduct in the context of grievance processing. *Allen* itself did not involve an employment grievance. Only one Washington case has involved a union's handling of an employment grievance, but in that case the court did not have to address whether the union's conduct was discriminatory, arbitrary, or in bad faith. *See Kelso v. Consolidated Beverages, Inc.,* 7 Wn. App. 87, 497 P.2d 1336 (1972). Therefore, we must look to the United States Supreme Court and Ninth Circuit cases for further guidance in this area.

---

[3]Lindsey's action against Metro has been stayed pending resolution of this appeal of Lindsey's action against the union.

The United States Supreme Court and the Ninth Circuit have held that in the context of grievance processing, the duty of fair representation prohibits a union from ignoring a meritorious grievance or processing that grievance perfunctorily. *See, e.g., Vaca v. Sipes,* 386 U.S. at 191; *Galindo v. Stoody Co., supra; Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir. 1985). A union must exercise special care in handling a grievance that concerns a discharge, because it is the most serious sanction an employer can impose. *See, e.g., Evangelista v. Inlandboatmen's Union,* 777 F.2d 1390, 1395 (9th Cir. 1985). However, unions need not arbitrate every case. *Vaca,* 386 U.S. at 191–92. Unions may screen grievances and process only those which they determine to have merit. *Johnson v. United States Postal Serv.,* 756 F.2d 1461, 1465 (9th Cir. 1985).

Furthermore, courts should "accord substantial difference" to a union's decisions regarding grievance processing, because a union must balance many collective and individual interests in making these decisions. *Peterson v. Kennedy,* 771 F.2d 1244, 1253 (9th Cir. 1985); *Johnson,* 756 F.2d at 1466; *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270, 1273 (9th Cir. 1983). The collective bargaining system by its very nature subordinates the interests of an individual employee to the collective interests of all the employees in the bargaining unit. *Vaca,* 386 U.S. at 182; *Dutrisac,* 749 F.2d at 1273.

Lindsey argues that the union violated its duty of fair representation in a number of ways. First, he contends that the union should have pursued his allegations that Metro was wrong in concluding that he failed to report the use of a prescription drug. Second, he contends that he could not be fired for the use of drugs if that use occurred while he was off duty and he did not work while under their influence. In this regard, he maintains that the union failed to conduct an adequate investigation, processed his grievance arbitrarily and perfunctorily, and also showed bad faith in its dealings with Lindsey.

## I
### FAILURE TO REPORT USE OF PRESCRIPTION DRUG

One of Metro's reasons for its action was Lindsey's failure to report the use of a prescription drug. Lindsey received a prescription for Valium in 1982 and contemporaneously reported that prescription to Metro. However, he admits that he used some of this Valium prescription in March of 1984. This use was not reported to Metro. One of Metro's work rules is that employees "[r]eport the *use* of prescription drugs to the base supervisor." (Italics ours.) Lindsey violated this rule when he failed to report his 1984 use of the Valium even though he initially reported the prescription 1½ years earlier. Therefore, this aspect of Lindsey's grievance had no merit and the union was justified in not pursuing it.

## II
### OFF–DUTY USE OF MARIJUANA

The remainder of our opinion addresses the main contentions of the parties, those relating to Metro's authority to fire an employee for off–duty use of marijuana.

### A
#### Adequacy of Investigation

The Ninth Circuit case law shows that a union satisfies its duty of fair representation if it conducts at least a minimal investigation into the merits of the grievance.

> A union's duty requires some minimal investigation of employee grievances, the thoroughness depending on the particular case; only an egregious disregard for union members' rights constitutes a breach of the union's duty.

*Castelli,* 752 F.2d at 1483 (citing *Tenorio v. NLRB,* 680 F.2d 598, 601 (9th Cir. 1982)).

The investigation, therefore, need not be exhaustive. For example, the Ninth Circuit has held that a 1½–hour investigation is sufficient, even in a discharge case. *Castelli,* 752 F.2d at 1483. The union's investigation of Lindsey's grievance was more than adequate under this standard. On three occasions, union officers questioned people who performed

the drug and alcohol tests as to the results and how the tests were conducted. They conferred with an attorney as to the test's legality, attended at least three meetings between Lindsey and Metro officials, obtained statements from union members who talked to Lindsey as he was being taken to the drug test, discussed Lindsey's prescriptions with a series of medical people, and confirmed with Laning that she had telephoned Metro about Lindsey's condition. They also discussed the grievance with Lindsey on numerous occasions prior to the first step hearing. We conclude that this investigation satisfied the union's duty of fair representation.

## B
### Decision To Drop Grievance

Lindsey has argued that he did not receive fair representation when the union decided to drop his grievance. As we have discussed, resolution of this issue requires us to analyze if the union acted arbitrarily, discriminatorily, or in bad faith.

### 1. *Arbitrariness*

The Ninth Circuit has held that a union will generally be held liable for arbitrary conduct only under certain circumstances:

> In all cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct, it is clear that the union failed to perform a procedural or ministerial act, that the act in question did not require the exercise of judgment and that there was no rational and proper basis for the union's conduct.

*Peterson,* 771 F.2d at 1254. *See also Evangelista,* 777 F.2d at 1399 n.5; *Dutrisac,* 749 F.2d at 1274. In accordance with this standard, the Ninth Circuit has stated that "[w]e have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance." *Peterson,* 771 F.2d at 1254. More specifically, a union's error in evaluating the merits of a grievance is not arbitrary conduct. *Peterson,*

771 F.2d at 1254.

The union's decision to drop Lindsey's grievance was not a procedural or ministerial act, but rather required the exercise of judgment. In making that decision, the union had to balance the interests of Lindsey against the collective interests of its other members. We accord substantial deference to such decisions. *Peterson,* 771 F.2d at 1253; *Johnson,* 756 F.2d at 1466; *Dutrisac,* 749 F.2d at 1273. Therefore, we conclude that under the Ninth Circuit standard the union's decision was not arbitrary.

Lindsey argues, however, that the dropping of his grievance was not justified by the reasons offered by the union in defense of its decision. Our State Supreme Court has indicated that the duty of fair representation demands that decisionmaking be rational. *Allen v. Seattle Police Officers' Guild,* 100 Wn.2d 361, 375, 670 P.2d 246 (1983). Accordingly, state law requires that judgmental decisions have a rational basis, even if the Ninth Circuit does not appear to require this. Therefore, we will analyze the rationale of the union's decision.

The union listed six reasons why it dropped Lindsey's grievance, the most important of which was the drug test results.[4] Those results showed without a doubt that Lindsey had used narcotics. Therefore, his termination was justified under the express terms of the labor agreement, and the union was justified in not wasting its resources in pursuing Lindsey's grievance beyond the "first step" hearing. Lindsey argues, however, that the labor agreement's prohibition against the use of narcotics cannot be interpreted to prohibit off–duty use of drugs. Lindsey points out that labor arbitrators generally hold that an employee cannot be fired for off–duty conduct if that conduct does not affect job performance or otherwise affect the employer's inter-

---

[4]Four of the other reasons related to Lindsey's credibility, focusing on his prior work record and admissions he allegedly made about his drug use. A fifth reason was a precedent set in a prior arbitration concerning employee drug use. We do not address these other reasons because of our holding that the test results fully justified the union's decision.

ests. *See* F. & E. Elkouri, *How Arbitration Works* 656–58 (4th ed. 1985); Wynns, *Arbitration Standards in Drug Discharge Cases,* 34 Arb. J. 2:19 (1979). Lindsey thus argues that he could not be fired absent proof that he was working while under the influence of drugs.

However, the labor agreement's language is not so limited; it provides that an employee can be discharged simply for the "use of narcotics". The union might very well wish to challenge this language, but its choice not to do so does not violate the duty of fair representation when the grievance is not particularly well suited for being the union's test case.[5] The union's decision as to when to challenge contract language is exactly the type of decision to which we should accord deference, because its very nature entails a weighing of the individual grievant's interests against those of the rest of the members. As we indicated earlier, sometimes the interests of an individual must be subordinated to those of the entire membership, and a union's decision in this regard will be accorded substantial deference. We conclude that the union's decision was fully rational, and in light of our earlier discussion, was not arbitrarily reached.

## 2. *Allegations of Bad Faith and Discrimination*

Finally, Lindsey contends that the union's conduct was discriminatory or in bad faith, as particularly shown by the union representative's telling him that there was no intra-union appeal procedure to challenge the dropping of his grievance. Lindsey argues that such an appeal procedure existed, whereby the member could appear before the union's Executive Board in order to have the representative's decision overturned. The union responds that a

---

[5]In the present case, Lindsey's grievance had a number of weaknesses that reduced its usefulness as a test case for the union's position. First, Lindsey's work record was poor, containing a number of suspensions and reprimands. See footnote 1. Second, Lindsey's credibility was subject to attack because one of his work violations involved falsification of Metro documents. Third, the union believes that Lindsey contradicted himself in explaining when he had used the drugs.

member could always appear before the Board, but that the Board was powerless to overturn the representative's decision. The union points out that the labor agreement implies that the decision is solely up to the business representative and that the Shop Steward Notebook states so expressly. Lindsey counterargues that neither of these documents controls the issue of whether an appeal process existed, because the labor agreement is not dispositive on the union's internal procedures and because the Shop Steward Notebook was never formally adopted as a rule by the membership as a whole. Nevertheless, the issue here is not whether the appeal process actually existed, but whether the representative's statement is evidence of discriminatory or bad faith conduct. The existence of the two documents shows that the union did not single out Lindsey in saying that no appeal procedure existed. Therefore, neither bad faith nor discrimination has been shown.

We find Lindsey's other allegations of bad faith and discrimination to be equally without merit. These relate to the union's failure to tell Lindsey about the accusations Laning made to the Metro base chief and alleged inconsistencies in the testimony of union officers. The truth of Laning's accusations was irrelevant to Lindsey's grievance against Metro, because the only significance of Laning's phone call was that it provided the base chief with good reason to require the drug test. Therefore, there was no reason for the union to tell Lindsey about the phone call. Furthermore, Lindsey's allegations about inconsistencies surrounding the officers' testimony are not well founded; the officers' statements were fully consistent with the other evidence in the record.

No reasonable person could conclude from the above evidence that the union acted in bad faith in processing Lindsey's claim. Likewise, no reasonable person could conclude that the union singled out Lindsey for special treatment or otherwise discriminated against him.

In summary, we hold as a matter of law that the union did not act arbitrarily, discriminatorily, or in bad faith.

Therefore, the union did not violate its duty of fair representation. We affirm the trial court's summary judgment.

LITTLE and WALTERSKIRCHEN, JJ. Pro Tem., concur.

Review denied by Supreme Court December 2, 1987.