[No. 14603-7-II.   Division Two.   March 25, 1993.]

KATHERINE E. SCHMIDTKE, *Appellant,* v. TACOMA SCHOOL
DISTRICT NO. 10, ET AL, *Respondents.*

*John F. Hansler* and *The Dolack Hansler Firm, Inc., P.S.,* for appellant.

*Clifford D. Foster, Jr.,* and *Vandeberg & Johnson; Catherine C. O'Toole,* for respondents.

PETRICH, J. — Katherine Schmidtke appeals from an order on summary judgment dismissing her claims against the Tacoma School District for a recalculation of her service time, and against the Tacoma Education Association for breach of its duty of fair representation. She contends that

her appeal to the superior court was timely; that material issues of fact exist about the amount of unpaid time she worked; and that her union breached its duty of fair repre-sentation by refusing to represent her in the grievance process and by refusing to submit her claims to arbitration. We affirm.

At the time of this action, Katherine Schmidtke had taught in the Tacoma Public School District (District) for 20 years on a half-time basis. She began in the 1967-68 school year and worked through the 1987-88 school year. Each school year she entered into a new contract with the District. These contracts described her obligation as "1/2 of 183 contract days", "1/2 of 182 contract days", "182 @ .5 time", "part-time .5 time", and "part-time .500 time". At the time Schmidtke filed her grievances, the collective bargaining agreement (Agreement) in effect between the District and the Tacoma Education Association (TEA), the teachers' exclusive bargaining representative, defined full time as 7.5 hours per day. Under the Agreement, full-time teachers were entitled each day to a one-half-hour duty-free lunch period and one school period per day for planning. As a part-time teacher, Schmidtke worked 3.75 hours, received no duty free lunch period and no scheduled time for planning.

The Agreement's grievance procedure had four levels. At level 1, the grievant discusses her claim with her immediate supervisor. If not satisfied, the grievant can appeal to level 2, where the grievant makes her claim to the superintendent of the school district. If not satisfied, the grievant can appeal to level 3, where the grievant makes her claim to the president of the board of the school district (Board). The president determines if the grievance shall be heard by the Board. The decision denying a Board hearing is final unless the grievance involves an alleged violation of the Agreement. If it does, level 4 may be invoked by the grievant's request of the TEA to submit the grievance to arbitration.

Pursuant to the Agreement, Schmidtke filed three grievances. Grievance one, filed July 10, 1987, alleged that she

worked more than half time for 20 years and requested 5 full years of retirement credit. She also requested $99,768.76 in compensation. The grievance was denied at level 1 on July 22, 1987, and denied at level 2 on July 24, 1987. At level 3, the president sent her a letter dated August 12, 1987, which said, "The Board determined not to hear your grievance . . .". Grievance two, filed October 21, 1987, alleged that she worked six-sevenths of a workday for 20 years and that she should receive half of six-sevenths day of sabbatical leave pay. The grievance was denied at level 2 on November 23, 1987. At level 3, the vice-president of the Board sent her a letter dated January 20, 1988, which said, "the Board of Directors determined that it would not hear your grievances . . .". Grievance three, filed November 12, 1987, alleged that other part-time teachers received .6 credit per day for teaching three of five class periods and that she was requesting back pay and retirement credit to reflect .7 time for every year she taught on a half-time basis. The same letter of January 20, 1988, denying grievance two also denied grievance three.

On April 15, 1987, nearly 3 months before filing grievance one, Schmidtke first requested the TEA to represent her in the grievance process. It refused. On July 2, 1987, Schmidtke's attorney requested that the TEA represent Schmidtke in the grievance process. The TEA wrote back, denying the request and explaining why. On January 7, 1988, Schmidtke requested that the TEA take her grievances two and three to arbitration. On January 25, 1988, the TEA refused the request, saying that there was no violation of the Agreement.

On July 5, 1988, she filed her complaint in the Pierce County Superior Court. Both the District and the TEA moved for summary judgment. The trial court granted these motions, dismissing Schmidtke's claims without specifying the basis for its dismissal.

■ The appellate court reviewing a summary judgment considers the matter de novo and makes the same inquiry as the trial court; summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with

the affidavits, if any, show there is no genuine issue about any material fact and, assuming facts most favorable to the nonmoving party, establish that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

### TIMELINESS OF FILING IN SUPERIOR COURT

First, we address whether Schmidtke failed to file her complaint within the 30-day statute of limitation period. RCW 28A.645.010 provides that any person aggrieved by a decision of any school official or board has 30 days "after the rendition of such decision or order" to appeal to superior court. Schmidtke contends this statute does not apply here because there was no final order from which to appeal. She contends that because the president of the Board never determined whether a level 3 grievance hearing should be held, the statute of limitations did not commence. She says the Board president's statement that the Board decided not to hear the matter is insufficient. She argues that we do not know how the president decided, that she had no reason to believe the decision was final, that only the president had the authority to make a final decision, and that no communication said this is a final decision. We disagree.

In *Haynes v. Seattle Sch. Dist. 1*, 111 Wn.2d 250, 758 P.2d 7 (1988), *cert. denied*, 489 U.S. 1015 (1989), the court held untimely a breach of contract claim filed after the 30-day limitation period of RCW 28A.645.010, holding that the statute applied to both judicial and nonjudicial actions or decisions of the school board. Schmidtke's complaint was filed nearly 1 year after the Board refused her first grievance and 5 months after it refused her second and third grievances. Article 13, section 85 of the Agreement provided, in part:

> The president of the Board shall review the grievance appeal and shall determine whether or not a Level III grievance appeal shall be held. If the Level III grievance is not held, the president of the Board shall reply to the grievant in writing within five (5) days. The decision of the Board shall be final in all grievances except those arising out of alleged violation of this Agreement.

While this section says the president shall determine whether an appeal shall be held, it does not say the president acting through the Board cannot make the decision. Also, the section specifically states that "the decision of the Board shall be final." Here, Schmidtke was informed that the Board determined not to hear her appeal. That was a final decision. From that point she had 5 days to request the TEA to submit her grievances to arbitration, and the TEA had 10 days to do so. The TEA informed Schmidtke on January 25, 1988, that it would not submit the matter to arbitration. Schmidtke's request of the TEA to submit her grievances to arbitration indicates her realization that the Board's decision was final.

Both Schmidtke and the District cite *Neilson v. Vashon Island Sch. Dist. 402*, 87 Wn.2d 955, 558 P.2d 167 (1976), but for different propositions. Schmidtke contends that under *Neilson* there can be no final decision of the Board until all of the established grievance procedures have been followed. While we agree with this proposition, as noted above, the Board's decision was final and commenced the statute of limitations. The District contends that in applying the holding in *Neilson* to the present case, the statute of limitations began when the TEA refused to take Schmidtke's grievances to arbitration. We disagree. In *Neilson*, the court held that the 30-day statutory period did not begin until after the Board reviewed a citizen advisory committee's recommendation to the Board on whether to reconsider its initial position. The trial court found that the grievance procedures leading to the Board's final decision had not been completed. Here, a request for arbitration can only take place after the president determines that a level 3 grievance will not be held or the Board has issued its final decision. Thus, the proper time for calculating the 30-day appeal period for grievance one was August 12, 1987, and for grievances two and three was January 20, 1988. Schmidtke did not file her complaint until July 5, 1988; thus, review of her grievances is time barred.

Also, any ambiguity that may have existed was resolved by a letter from the District's legal supervisor that Schmidtke received on June 2, 1988. This letter said that the Board "reviewed the matters through the grievance process, and has denied them. Having fully reviewed the situation, the Board will not review the matter further." Even giving her the benefit of the doubt as to the first letters, Schmidtke did not file her appeal within 30 days of receiving this letter either.

### MATERIAL ISSUES OF FACT ON RIGHT TO COMPENSATION

Schmidtke contends that material issues of fact exist about her right to compensation for time she worked in excess of her contract requirement and, therefore, the trial court erred in granting summary judgment. Because this claim was not timely filed, we do not address it.

### THE TEA'S DUTY OF FAIR REPRESENTATION

Schmidtke's final complaint is not subject to the 30-day time limitation of RCW 28A.645.010; therefore, we consider it. She contends the TEA breached its duty of fair representation in failing to represent her during the grievance procedure and in failing to take her grievance to arbitration. She contends she had a right to representation under the Agreement; that there was a violation of the Agreement in that she worked more than she was compensated for; and that an order for arbitration should not be denied if there is *an* interpretation that covers the claim. Relying on *Vaca v. Sipes*, 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967), she contends that the TEA breached its duty and the remedy is an order to compel arbitration and/or damages. At the least, she contends there is an issue of fact about whether the TEA wrongfully refused to submit the case to arbitration.

██ As a union representative, the TEA has a fiduciary duty of fair representation to its members. *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 371-72, 670 P.2d 246 (1983). In order to demonstrate a breach of that duty, it must be shown that the TEA acted (1) arbitrarily; (2) dis-

criminatorily; or (3) in bad faith. *Lindsey v. Municipality of Metro Seattle*, 49 Wn. App. 145, 148, 741 P.2d 575, *review denied*, 109 Wn.2d 1016 (1987). A reviewing court affords substantial deference to the union's determination not to represent a member because the union must balance the individual interests against the collective interests. *Lindsey*, at 152.

1. Failure To Submit Claims to Arbitration.

First, we cannot conclude that a genuine issue of material fact exists about whether the TEA acted arbitrarily because the TEA demonstrated a rational basis for its decision to deny Schmidtke's request. The TEA's position was that the Agreement does not cover Schmidtke's claims as they are not based on the language of the Agreement and, therefore, no violation existed. The contract does not require paid duty-free lunch time or paid preparation periods for part-time teachers. Further, claims for inequitable treatment (grievance three) are expressly excluded from arbitration.

In response to Schmidtke's contention that she worked three of five periods, the TEA simply contends that the Agreement provisions are measured by the hours of the day, not by the number of teaching periods. As this is a reasonable interpretation of the Agreement, we cannot conclude that the TEA acted arbitrarily.

Also, the TEA had a rational basis for determining that the grievances were not timely filed, *i.e.*, the Agreement requires that grievances be filed within 65 days of the fact on which the grievance was based. This provision barred all but the last year of Schmidtke's employment from consideration. Thus, the TEA could rationally have determined that Schmidtke's claims were either not based upon the Agreement or were not timely and, therefore, an arbitrator would have dismissed the claims.

Second, there is no genuine issue of fact about whether the TEA discriminated or acted in bad faith. We find no evidence that persons under similar situations with similar grievances were given representation while Schmidtke was not. As to bad faith, a single sarcastic letter is insufficient to

show that the TEA acted in bad faith when there is also evidence showing that her claims were carefully evaluated and investigated and that the TEA Executive Board reviewed the merits of her grievance.

2. Failure To Represent Schmidtke in Grievance Process.

Schmidtke contends that the TEA had an absolute duty to represent her through the grievance procedures by virtue of article 8, section 86(a) of the Agreement, which provides, in part: "At each step of the procedure for adjusting grievances, the employee *may* be accompanied by a designated representative of the Association." (Italics ours.)

The TEA contends that it did not have an absolute duty to represent Schmidtke; rather, its duty was discretionary in that the Agreement uses "may" in defining its obligation. The TEA argues that it did not abuse its discretion in its refusal because it found that Schmidtke's claims were not covered by the Agreement; that there was no factual merit to her claims; and that they were not timely filed. Based on these findings, the TEA claims it had a rational basis for its decision to refuse representation.

Schmidtke contends that the term "may" does not make the union obligation to represent its members discretionary because the term "may" applies to what the grievant may do, *i.e.*, the grievant may bring a union representative to hearings under the grievance procedure.

█ We agree with Schmidtke. The word "may" in the Agreement refers to the grievance process available to the employee and not to the union's duty of representation. However, the union's duty of representation is to process those grievances it deems to have merit and not to refuse to represent someone arbitrarily, discriminatorily, or in bad faith. *Lindsey*, 49 Wn. App. at 149. The TEA did not have an absolute duty to represent Schmidtke, and as noted above, the TEA made a reasoned decision not to do so after examining the facts and the law. We find no error.

Judgment affirmed.

ALEXANDER, C.J., and SEINFELD, J., concur.