[No. 62380-0-I.   Division One.   December 21, 2009.]

DOYLE MUIR, *Respondent*, v. COUNCIL 2 WASHINGTON STATE
COUNCIL OF COUNTY & CITY EMPLOYEES ET AL., *Petitioners*.

*Jon H. Rosen* (of *The Rosen Law Firm*), for petitioners.
*Richard J. Hughes*, for respondent.

¶1 ELLINGTON, J. — Doyle Muir sued his union, alleging breach of the duty of fair representation. Although the undisputed evidence established that the union's decision not to take his wage grievance to arbitration was not arbitrary, discriminatory, or in bad faith, the superior court denied its motion for summary judgment. We reverse.

## BACKGROUND

¶2 Doyle Muir worked for San Juan County as a road maintenance supervisor. In August 2003, the county terminated his employment. Muir filed a grievance. His union, Council 2 Washington State Council of County & City Employees and Local 1849 (Council 2), submitted the

grievance to arbitration, and in May 2004, the arbitrator concluded the county did not have just cause to terminate Muir but was entitled to take disciplinary action against him. The arbitrator authorized a 30 day suspension without pay and ordered Muir reinstated to a nonsupervisory position as road crew equipment operator, a position two steps below his previous job. The parties disagreed about implementation of the decision, and the arbitrator issued an amended opinion and order clarifying that he imposed a disciplinary demotion because, although Muir's termination was improper, he "was clearly unfit to be reinstated to his prior supervisory position."[1]

¶3 The parties agree that Muir's demotion constituted an involuntary transfer under the collective bargaining agreement (CBA). The relevant provision of the CBA provides:

> An employee who is involuntarily transferred to a position in a lower classification shall be placed on the step of the new pay range equivalent to their rate of pay prior to the transfer, if such step exists. If no such step exists, the employee shall be "redlined" until the lower pay range catches up or until the expiration of twelve (12) months, whichever occurs first. This section shall not apply to reduction in force situations.[2]

There was no step on the equipment operator pay range equivalent to the pay Muir received as a supervisor. The county and the union agreed Muir would be "redlined" and the arbitrator set Muir's reinstatement date, May 10, 2004, as the redline commencement date.

¶4 Muir was paid at his supervisory rate for 12 months, until May 2005. The county then reduced his wage to that of an equipment operator.

¶5 Muir filed a grievance over his reduction in pay, arguing he should continue to be paid the higher wage because the involuntary transfer clause does not clearly

---

[1] Clerk's Papers (CP) at 137.

[2] CP at 52.

state otherwise. He also argued the county was treating him differently than former employee Gerry Brown, who continued to receive his redlined salary for longer than 12 months after his transfer. The county rejected these arguments and denied the grievance at each of the three steps of the CBA grievance procedure.

¶6 After the final denial of his grievance, Muir requested that Council 2 pursue arbitration on his behalf. Believing arbitration would be unsuccessful, Council 2 declined. Muir sued the union for breach of the duty of fair representation. Council 2 moved for summary judgment, which the trial court denied. We granted discretionary review. We apply the usual standard of review for summary judgment.[3]

## DISCUSSION

■ ¶7 A union must fairly represent its members.[4] This duty is a necessary corollary to the union's statutory right to exclusive representation.[5] A union breaches its duty of fair representation when its conduct is discriminatory, arbitrary, or in bad faith.[6]

■ ¶8 In the context of grievance processing, the duty of fair representation prohibits a union from ignoring a meritorious grievance or processing a grievance in a perfunctory manner.[7] But a union has no duty to arbitrate every grievance; it may screen its members' grievances and

---

[3] Appellate courts review decisions on motions for summary judgment de novo, viewing the facts and all reasonable inferences therefrom in favor of the nonmoving party. *Johnson v. King County*, 148 Wn. App. 220, 225, 198 P.3d 546 (2009); *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329, 2 P.3d 1029 (2000). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

[4] *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 374, 670 P.2d 246 (1983).

[5] *Lindsey v. Mun. of Metro. Seattle*, 49 Wn. App. 145, 148, 741 P.2d 575 (1987).

[6] *Id.*

[7] *Id.* at 149; *Womble v. Local Union 73, Int'l Bhd. of Elec. Workers*, 64 Wn. App. 698, 701, 826 P.2d 224 (1992).

process only those it determines have merit.[8] " 'A union's duty requires some minimal investigation of employee grievances, the thoroughness depending on the particular case; only an egregious disregard for union members' rights constitutes a breach of the union's duty.' "[9]

¶9 Muir contends Council 2 breached its duty "by discriminating against him; by refusing to arbitrate the County's reduction of his wage rate; by arbitrarily asserting his wage rate had been determined by a prior arbitration; by arbitrarily conducting its investigation and because the decision was premised upon Council 2's animosity toward Muir."[10]

## Arbitrariness

¶10 Muir contends Council 2's refusal to arbitrate his wage reduction grievance was arbitrary because his grievance advanced the only reasonable interpretation of the involuntary transfer clause. We do not agree.

¶11 The involuntary transfer clause provided that the employee be " 'redlined' until the lower pay range catches up or until the expiration of twelve (12) months, whichever occurs first."[11] Muir insists this means that the transferred worker's wage is frozen for up to 12 months and then continues to rise as if the transfer never occurred. This interpretation is untenable because it ignores half the language. The provision plainly requires that a transferred worker's pay remain at the pretransfer level until one of two events occurs: either the new range catches up or 12 months pass. If the new pay range has not overtaken the old within 12 months, the new range takes effect. This protects workers by delaying any wage reduction for one year.

---

[8] *Lindsey*, 49 Wn. App. at 149.

[9] *Id.* at 150 (quoting *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985)).

[10] Resp't's Br. at 31.

[11] CP at 52.

■ ¶12 The issue here, however, is not whether the union correctly interpreted the involuntary transfer clause. Rather, the only question is whether, in declining to arbitrate Muir's grievance, the union deliberated the merits of Muir's argument and can explain its decision not to pursue it. "[I]n accordance with the broad discretion traditionally owed to unions, we do not scrutinize the quality of the union's decision."[12]

¶13 The undisputed facts establish that the union both deliberated the merits of the grievance and has a rational and nondiscriminatory explanation for declining to pursue it.

¶14 Council 2 asked its general counsel, Audrey Eide, to assess the merits of Muir's grievance. Eide followed her usual procedures for evaluating a grievance: she reviewed the CBA and the arbitrator's opinions and orders, and she consulted with the attorney who represented Muir at the previous arbitration. She also obtained information about Gerry Brown, the former employee whom Muir identified as an example of the county's disparate treatment. Eide learned that Brown was not demoted as part of a disciplinary action but had been "reclassified" when his job was eliminated, and she concluded Brown's experience did not establish a past practice that would bind the county to pay Muir the higher wage indefinitely. Ultimately Eide concluded Muir's grievance would likely fail. The union president relied on Eide's opinion in deciding not to pursue arbitration.

¶15 Even if Council 2's evaluation was incorrect, "a union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance [or] in interpreting particular provisions of a collective bargaining agreement."[13]

---

[12] *Slevira v. W. Sugar Co.*, 200 F.3d 1218, 1221 (9th Cir. 2000); *accord Peters v. Burlington N. R.R.*, 931 F.2d 534, 540 (9th Cir. 1990); *Lindsey*, 49 Wn. App. at 152-53.

[13] *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985).

¶16 The superior court focused on the possible merits of the grievance, remarking that Muir's interpretation of the involuntary transfer clause was plausible and that the union should want to have that issue resolved. In so doing, the court ignored the broad discretion of the union in this area and failed to focus on whether the union's decision had a rational basis. Even if we agreed that Muir's interpretation of the CBA was reasonable (which we do not), the union clearly acted within its discretion in refusing to take his grievance to arbitration. Denial of its motion for summary judgment was error.

## Discrimination and Bad Faith

¶17 Muir's complaint also alleged that the union breached its duty by discriminating against him and acting in bad faith. The trial court did not address these issues. We have reviewed the record and discern no genuine issues of material fact.

¶18 Below, the only evidence Muir presented on his discrimination claim was his impression that the union treated him differently than it treated Brown. But Muir concedes that the union considered the two situations and found them dissimilar. Muir also claimed the union was dishonest in certain letters it wrote him but admits he had no evidence the authors did not believe what they wrote. When asked whether he had evidence that Council 2 President Chris Dugovich or General Counsel Eide had any personal or professional animosity toward him, Muir stated, "Not that I can recall."[14]

¶19 On appeal, Muir points to two excerpts from Dugovich's testimony as proof of discrimination. Dugovich testified that the union "arbitrate[s] to a fault" and always "give[s] the benefit of the doubt" to the employee,[15] and that "we could get a dozen people in this room and we could all

---

[14] CP at 156.

[15] CP at 584.

disagree on exactly what [the involuntary transfer clause] means."[16] Muir infers from these statements that Dugovich believed Muir had a meritorious argument and suggests Dugovich would have submitted the issue to arbitration but for his animus against Muir. But as noted above, Muir had no evidence that Dugovich declined to arbitrate for any reason other than that expressed, i.e., that arbitration would likely be unsuccessful. Muir has presented no evidence to suggest a triable question of fact as to discrimination.

¶20 Muir's claims of Dugovich's bias and bad faith are similarly unsupported. He asserts Dugovich instructed the local executive board to ask for Muir's resignation as president, but the record does not so indicate. Rather, the evidence is that Local 1849 board members were unhappy with Muir's conduct as president and wished to file charges against him. Dugovich advised against it, on grounds that such a process could be "long, painful and sometimes unsatisfactory" and that "short of doing that," the board could request Muir to resign.[17] There was no evidence that Dugovich took any action to encourage the board to act against Muir, and it does not appear the board ever sought Muir's resignation. Muir offered no evidence that the executive board was involved in deciding whether to pursue arbitration on the second wage grievance.

¶21 Muir also cites several letters written by Dugovich *after* Muir sued Council 2 and Local 1849 that discuss Muir's lawsuit and warn members that Muir may not be acting in their best interests. These letters do not support a finding that Dugovich's decision not to pursue arbitration was taken in bad faith or in a discriminatory fashion.

## CONCLUSION

¶22 Muir has failed to raise a genuine issue of material fact on his claim of breach of the duty of fair representation.

---

[16] CP at 282.

[17] CP at 300-01.

536

The evidence shows the union adequately investigated and deliberated on Muir's grievance and provided a rational and reasoned explanation for declining to submit the matter to arbitration. The law requires no more. By denying summary judgment on grounds that reasonable minds could differ on the interpretation of the relevant CBA clause, the trial court employed an erroneous standard.

¶23 We reverse and remand for entry of summary judgment for Council 2.

Lau and Leach, JJ., concur.

Review denied at 169 Wn.2d 1008 (2010).