# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROLAND KILLIAN; DENNIS BAILEY and DEBRA BAILEY, | ) ) ) | No. 74024-5-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 609-A, | ) ) ) ) | |
| Respondent, | ) ) | |
| SEATTLE PUBLIC SCHOOLS, a municipal corporation, | ) ) ) | |
| Defendant. | ) ) ) | FILED: August 22, 2016 |

APPELWICK, J. — The trial court dismissed Killian and Bailey's lawsuit against Local 609 for breach of the duty of fair representation and the unauthorized practice of law as time barred. It denied their motion to amend the pleadings to add a Consumer Protection Act[1] claim. Killian and Bailey's claims against Local 609 all flow from conduct of the union representative in the course of the grievance procedure provided in their collective bargaining agreement.

---

[1] Chapter 19.86 RCW.

These claims are subsumed in the duty of fair representation. The claims were not timely filed. We affirm.

## FACTS

Roland Killian and Dennis Bailey (appellants) were employed by Seattle Public Schools (SPS). Killian worked as a grounds foreman, overseeing school grounds personnel and other gardeners. Bailey was a grounds worker and gardener. The appellants were both members of the International Union of Operating Engineers, Local 609-A (Local 609). Local 609 is the collective bargaining unit for employees of SPS, including grounds employees.

On September 7, 2011, SPS sent the appellants letters informing them they were being placed on administrative leave because of allegations that they were misusing SPS resources. On December 18, 2012, SPS informed the appellants that it concluded there was proper cause to terminate their employment for misconduct. It told the appellants that their employment would be terminated effective December 27, 2012. SPS noted that the appellants could appeal the termination decision through the grievance procedure provided in the collective bargaining agreement (CBA).[2]

Local 609 filed grievances on behalf of the appellants, alleging they were disciplined without just cause and progressive discipline in violation of the CBA.

---

[2] Article XVIII of Local 609's CBA outlines the grievance procedure. The grievance process is divided into steps—Step 1, Step 2, Step 3, and Step 4. If a grievant remains unsatisfied and reaches Step 4, the grievant may request mediation or alternative dispute resolution. If the grievance is not settled to the grievant's satisfaction, the grievance may then be submitted to final and binding arbitration. The arbitration is conducted by an arbitrator under the rules of the Public Employment Relations Commission.

Local 609 representative Mike McBee represented the appellants during the CBA grievance process. In March 2013, the appellants sought the assistance of outside counsel to pursue individual civil claims against SPS. SPS denied the grievances at Steps 1 through 3. After SPS denied the grievances at Step 3, McBee proposed mediation. The appellants expressed concern to McBee about how the mediation would affect their individual civil claims. McBee told the appellants that the mediation was intended to address only the union claims. He also told them that their outside counsel was not allowed to participate in the mediation.

On June 13, 2013, SPS and Local 609 filed a joint grievance mediation request with the Washington Public Employment Relations Commission (PERC). The parties proceeded to mediation with PERC. McBee was present at the mediations. Mediation began on August 5, 2013. The first day of mediation ended without settlement after SPS offered a monetary settlement much lower than what was sought. On September 9, 2013, the second day of mediation, SPS made higher monetary offers to the appellants, but the appellants rejected them. That same day, McBee presented SPS's monetary offers to settle the grievances to Local 609's executive board. At this time, the board voted to move the grievances to arbitration, but it reserved the right to rescind that decision if SPS improved its settlement offer. McBee informed the appellants that the board had voted to proceed to arbitration, but that Local 609 would consider accepting a higher settlement offer from SPS in the future.

On September 17, 2013, after the two unsuccessful mediation attempts, SPS offered to settle Local 609's grievances and pay $100,000 to Killian and $75,000 to Bailey if each of them would agree to release all legal claims against SPS. That day, McBee suggested to board members that Local 609 should accept SPS's offer and not proceed to arbitration. He noted that the settlement offer was the largest offer he had seen from SPS for one of its members. McBee's e-mail also stated:

> I have calls into both grievants but remember, the grievance belongs to the union and we decide to proceed or not. I will be recommending to both of them that they consult their attorney before deciding to accept o[]r reject their individual offers. If they reject, and it's up to them, they can pursue their claims in court.

The board voted to settle the grievances and not proceed to arbitration in exchange for SPS extending the offer to the appellants.

That same day, outside counsel for the appellants, Chellie Hammack, wrote to counsel for Local 609, Kathleen Phair Barnard, summarizing various conversations that the two attorneys had in the past regarding the appellants' claims. Hammack also summarized conversations she had with her clients. Hammack stated that she had previously expressed concern that SPS might attempt to engage the appellants in a discussion that included settlement of all of their claims during the mediation process. She noted that she reviewed a draft settlement agreement after one of the mediation sessions, and it was clear that SPS was attempting to resolve the appellants' individual civil claims. Hammack stated that McBee never told her clients to notify her when the issue of waiver of civil claims arose at the mediation. She further stated that McBee had informed

4

her clients that if they did not accept the settlement offer from SPS, Local 609 would decline to represent them further and would not pursue arbitration on their behalf. And, that the appellants felt pressured to accept the offers. She stated she believed that Local 609's conduct was inappropriate, and that she had the right to be contacted if and when her clients' individual civil claims were involved in the settlement discussions.

Local 609 and SPS entered into a settlement agreement on September 24, 2013. The appellants refused SPS's final settlement offers. When Hammack contacted SPS to discuss the possible settlement of the appellants' individual civil claims, SPS indicated that it had already extended an offer of resolution of those claims to Local 609, and it was not interested in pursuing further discussions.

On May 29, 2014, Bailey and Killian filed complaints against both Local 609 and SPS, and the cases were later consolidated. The appellants brought a claim of unlawful discrimination[3] and a claim of breach of contract against SPS. And, they alleged that Local 609 had breached its duty of fair representation (DFR) and had negligently engaged in the unauthorized practice of law. On May 29, 2015, Local 609 moved for summary judgment, alleging that all of the appellants' causes of action were encompassed by Local 609's DFR claim. It asserted that the statute of limitations period for DFR claims is six months and that the appellants' claims were consequently time barred. On June 29, 2015, the appellants moved to amend their complaint to include a Consumer Protection

---

[3] Bailey's complaint also included a claim of retaliation against SPS.

5

Act[4] (CPA) claim. On August 4, 2015, the trial court granted Local 609's motion for summary judgment. The trial court also denied the appellants' motion to amend, reasoning that any CPA claim would in substance be a DFR claim that would be barred by the applicable statute of limitations.

The appellants appeal.

## DISCUSSION

The appellants argue that the trial court erred when it granted Local 609's motion for summary judgment based on the statute of limitations. They assert that even if their claims are all effectively DFR claims, the statute of limitations for those claims is two years, rendering their lawsuit timely. Finally, they contend that even if the statute of limitations period is six months, summary judgment is improper. They maintain this is so, because there are genuine issues of material fact about whether the appellants failed to file their action within the statute of limitations period.

The trial court granted Local 609's summary judgment motion as to all of the appellants' claims on the basis of the statute of limitations. Therefore, it was presumably persuaded by Local 609's argument that the appellants' unauthorized practice of law claims were subsumed by their DFR claims as a matter of law and that a six month statute of limitations applied to all of the claims.

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate

---

[4] Chapter 19.86 RCW.

6

only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, the court draws reasonable inferences in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

### I.   Unauthorized Practice of Law and CPA Claims

The appellants argue that their unauthorized practice of law and CPA claims are not subsumed in their DFR claims, because those causes of action are separate and distinct from their DFR claims. Consequently, they argue that applying the statute of limitations for a DFR claim is not appropriate. Instead, the appellants cite to RCW 4.16.080(2) and contend that the statute of limitations for their negligent and unauthorized practice of law claim is three years. And, they cite to RCW 19.86.120 and claim that the statute of limitations for their CPA claim is four years. Thus, whether the appellants' other claims are subsumed in their DFR claim determines which statute of limitations applies and whether the appellants' claims are time barred.

In Washington, the Public Employees' Collective Bargaining Act (PECBA), chapter 41.56 RCW, governs CBAs with state public employers. Navlet v. Port of Seattle, 164 Wn.2d 818, 828, 194 P.3d 221 (2008). Unions have a duty under Washington state law to fairly represent their members—the duty of fair representation (DFR). Lindsey v. Mun. of Metro. Seattle, 49 Wn. App. 145, 148, 741 P.2d 575 (1987). In the context of grievance processing, the DFR prohibits a union from ignoring a meritorious grievance or processing that grievance

7

perfunctorily. Id., at 149. A union must exercise special care in handling a grievance that concerns a discharge, because it is the most serious sanction an employer can impose. Id. However, unions need not arbitrate every case. Id. Courts should accord substantial deference to a union's decisions regarding grievance processing, because a union must balance collective and individual interests in making these decisions. Id. The collective bargaining system by its very nature subordinates the interest of an individual employee to the collective interests of all the employees in the bargaining unit. Id. The DFR is breached when a union's conduct is discriminatory, arbitrary, or in bad faith. Id. at 148.

While federal law generally preempts the field of labor law, it does not govern over CBAs with state public employers. Navlet, 164 Wn.2d at 828. But, this court may look to the interpretation of federal labor law where the law is similar to state law. Id. at 828-29; Allen v. Seattle Police Officers' Guild, 100 Wn.2d 361, 372, 670 P.2d 246 (1983). Here, the parties rely predominantly on federal case law.

Local 609 cites to the Ninth Circuit case, Peterson v. Kennedy, 771 F.2d 1244 (9th Cir. 1985), to support its assertion that the appellants' claims are subsumed in their DFR claims. Peterson concerned a legal malpractice claim against a union-employed attorney. Id. at 1251. The plaintiff-employee claimed that the union attorney remained subject to liability for professional malpractice independent of the union's potential liability for breach of its DFR. Id. at 1256. The Peterson court rejected this argument, and held that legal malpractice claims against union attorneys were subsumed as DFR claims against the union. Id.

In holding that the plaintiff's legal malpractice claims against the union attorney were subsumed, the Peterson court began with a discussion of the Atkinson[5] rule. Id. In Atkinson, the United States Supreme Court held that individual damage claims may not be maintained against union officials for acts that are undertaken on behalf of the union. Peterson, 771 F.2d at 1256. The basis of the rule is that historically, only the union was to respond for union wrongs. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 247-48, 82 S. Ct. 1318, 8 L. Ed. 2d 462 (1962). And, in Peterson, the court stated that the Atkinson rule applies to and bars malpractice claims against attorneys representing the union. Id. at 1258. The court reasoned that where the attorney performs a function in the collective bargaining process that would otherwise be assumed by the union's business agents or representatives, the rationale behind the Atkinson rule is applicable. Id.

The appellants claim that Peterson is not applicable in this case, because the issue before the court in that case was different. In Peterson, the plaintiff-employee brought DFR claims against the union, but the legal malpractice claims against only the union attorney in his individual capacity. See id. at 1251, 1256. Therefore, the Peterson court's discussion and reasoning surrounding whether the plaintiff's legal malpractice claim was subsumed was in response to a different question. The court was considering whether a legal malpractice claim against an individual union attorney is subsumed in a DFR claim against a union

---

[5] Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S. Ct. 1318, 8 L. Ed. 2d 462 (1962).

that alleges the union, through its representatives, gave erroneous advice. Id. at 1251.

We acknowledge that Peterson is factually distinguishable in this regard. Here, the appellants' lawsuit was filed against the union itself rather than an individual union employee. Still, we find the Peterson court's reasoning instructive here. The Peterson court specifically based the rule it was adopting—that a union attorney is not subject to individual liability for acts performed on behalf of the union in the collective bargaining process—on a functional assessment of the attorney's role as a union representative within the collective bargaining process. Id. at 1259. Notably, the court went on to say:

> Our decision does not mean that union members are necessarily without a remedy when attorneys employed by the union fail to process grievances adequately. If an attorney's conduct falls within the "arbitrary, discriminatory or bad faith" test . . . the union member may sue the union for breach of the duty of fair representation.

Id. at 1259. Thus, when the union attorney is performing acts on behalf of the union in the collective bargaining process, the plaintiff's cause of action lies against the union itself and it is a DFR claim.

The appellants also attempt to distinguish Peterson, by claiming that Local 609's actions were not within the scope of the collective bargaining process, because they were not authorized by the CBA.[6] In a light most favorable to the

---

[6] The only authority the appellants cite to support this assertion is an unpublished Ninth Circuit opinion issued in 2000. Therefore, we do not consider it. See GR 14.1(b) (a party may cite an unpublished opinion as authority only if citation to that opinion is permitted under the law of the jurisdiction of the issuing court); FRAP 36.3 (stating that unpublished dispositions in the Ninth Circuit

appellants, the allegations for the unauthorized practice of law claim amount to the following: Local 609 engaged in the unlawful practice of law when it negotiated a settlement of the appellants' civil claims, advised the appellants that the amount offered for resolution of those claims was fair and reasonable, advised the appellants to accept the settlement offer, and participated in and/or approved the drafting of the settlement agreement that provided for resolution of all of the appellants' claims and set out an amount of damages and costs associated with their individual civil claims. The basis of the appellants' CPA claim is that the allegations supporting the unauthorized practice of law claim also support a CPA claim.

Like in Peterson, McBee represented the union. All of the allegedly improper acts by Local 609 occurred within the collective bargaining mediation process between the appellants and SPS. Any alleged harm flowed from Local 609's settlement with SPS and the termination of the grievance process. The unauthorized practice of law claim is a legal negligence claim as was the claim in Peterson. What is different is that McBee was not an attorney. We hold that when a nonattorney union representative is alleged to have engaged in the unauthorized practice of law in the course of the grievance process under the CBA, the Peterson rule applies.

Therefore, any unauthorized practice of law claim arising in the course of the grievance procedure is subsumed in a DFR claim against the union. And,

issued before January 1, 2007 may not be cited except in limited circumstances that do not apply here).

11

because the appellants' CPA claim is based on the appellants' unauthorized practice of law claim, we conclude that their CPA claims are also subsumed in the DFR claim against the union.[7] All of the appellants' claims are subject to the statute of limitations for DFR claims.

## II. DFR Statute of Limitations

The appellants cite to RCW 4.16.130[8] and assert that the proper statute of limitations period for DFR claims is two years. By contrast, Local 609 cites to Imperato v. Wenatchee Valley College, 160 Wn. App. 353, 247 P.3d 816 (2011) and contends that the applicable statute of limitations period is six months.

In Imperato, Imperato filed an action in superior court almost eight months after he was discharged, alleging breach of contract against his employer and a DFR claim against his former union. Id. at 356. The defendants filed a motion for summary judgment, claiming that Imperato's action was barred by the statute of limitations. Id. at 357. The trial court granted summary judgment in favor of the defendants. Id.

In determining the applicable statute of limitations for Imperato's claims, the Imperato court noted that the DFR claims should be treated as unfair labor claims under Washington law. Id. at 360. It noted that unfair labor practice

---

[7] Because we reach this conclusion, the trial court did not abuse its discretion when it denied the appellants' motion to amend their complaint to add CPA claims. See Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142, 937 P.2d 154, 943 P.2d 1358 (1997) (stating that a trial court does not abuse its discretion when it denies a motion to amend because the new claim is futile or untimely).

[8] RCW 4.16.030 is a catch-all provision that provides a two year statute of limitations for those claims not referenced elsewhere by the legislature. Imperato v. Wenatchee Valley College, 160 Wn. App. 353, 360, 247 P.3d 816 (2011).

claims are addressed by a six month statute of limitations set forth in RCW 41.56.160(1) and RCW 41.80.120(1). Id. at 360-61. But, that those statutes only establish the statute of limitations for unfair labor practice claims that are specifically filed with PERC. Id. at 355-56, 361. Thus, the Imperato court was tasked with deciding which statute of limitations applies when a union employee files directly in superior court instead of with PERC. Id. at 361.

The court noted that the statutes were silent as to whether unfair labor practice claims filed in superior court were subject to the statute of limitations contained in RCW 41.56.160(1) and RCW 41.80.120(1). Id. at 362. But, the Imperato court ultimately held that the six month statute of limitations applies to DFR claims filed directly in superior court. Id. at 364. It reasoned that application of the six month statute of limitation period to DFR claims would serve several important policies: (1) It would prevent piecemeal litigation; (2) Applying a different statute of limitations to DFR claims filed in superior court would frustrate the role of PERC in promptly resolving labor disputes; and (3) It would provide consistency, because federal law also establishes a six month statute of limitations. Id. In so holding, the Imperato court rejected the argument that it should apply the three year statute of limitations in RCW 4.16.080, the six year statute of limitations for breach of a written agreement in RCW 4.16.040, or the two year statute of limitations in RCW 4.16.130. Id. at 362, 364.

The appellants do not attempt to distinguish Imperato. Instead, they merely argue that "the two year statute of limitations [in RCW 4.16.130] is the most appropriate and . . . [the] Imperato decision is in error." They argue that

had the legislature intended DFR claims to be subject to the six month statute of limitations, it would have done so explicitly by statute. We adhere to Imperato. To the extent the appellants' claims are considered DFR claims, they are subject to a six month statute of limitations period.

III.    Expiration of the Statute of Limitations

The appellants argue that even accepting the six month statute of limitations period, there are issues of material fact surrounding when the statute of limitations period began. They assert that a discovery rule applies and when they knew or reasonably should have known of all the essential elements of their causes of action is a question of fact for the jury.

The appellants cite to Ninth Circuit case law to support their assertion. Federal law dictates that the statute of limitations begins to run when an employee knows or should know of the alleged breach of DFR. Harris v. Alumax Mill Prod., Inc., 897 F.2d 400, 404 (9th Cir. 1990). In Harris, the court determined that this date for a federal DFR claim was no later than the date on which the employee was informed by a union representative that the union would not be pursuing a grievance on his behalf. Id. The appellants do not cite to any Washington state cases explicitly discussing when state DFR causes of action accrue. But, they assert that under Washington law, the common law discovery rule applies to all statutes of limitations in the absence of legislation limiting the application of the rule. Under Washington's common law discovery rule, a cause of action accrues when a claimant knows, or in the exercise of due diligence, should have known all the essential elements of the cause of action. Funkhouser

v. Wilson, 89 Wn. App. 644, 666-67, 950 P.2d 501 (1998), affirmed by C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 985 P.2d 262 (1999).

The appellants emphasize that there are issues of material fact surrounding when they had reasonable notice that Local 609 was no longer pursuing their grievances and when they knew of all essential elements of the cause of action. The appellants point the court to several facts in the record that they claim show they were confused about whether Local 609 was going to advance the grievances to arbitration.

Local 609 responds that Hammack's September 17, 2013 letter to Barnard illustrates that the appellants and Hammack knew on that date. In that letter, Hammack stated,

> Today, after meeting with both my clients to discuss the issues, and after our discussion, Mr. McBee called my clients again extending an offer made by SPS. Further, Mr. McBee told both of my clients that if they did not accept the offers extended the union would decline to represent them further and would not pursue an arbitration on their behalf.

But, Hammack also noted that McBee was trying to pressure the appellants into settling their civil claims without the benefit of counsel. And, she noted that Barnard had promised to make sure that Hammack was notified if settlement of the civil claims was involved. Consequently, she concluded the letter by stating that she needed clarification of the union's position. Local 609 maintains that even if the September 17 letter is insufficient to establish knowledge, October 12, 2013 would be the next appropriate date—when Bailey heard the final announcement that Local 609 would not be advancing their claims to arbitration.

But, the appellants claim that, to date, they have not received a written notice about the status of their grievance. The appellants cite to no legal authority to support their implicit assertion that only <u>written</u> notice triggers the knowledge required for the statute of limitations to run. And, even if written notice was required, on October 18, 2013, Barnard wrote to Hammack and stated,

> In my letter of October 16, 2013, I detail the two communications[9] you sent me on September 17, 2013, acknowledging that you knew that Local 609 had decided not to proceed to arbitration. Your assertions establish your knowledge. Your latest letter asks that the Union put its position in writing. My October 16[10] letter did that already.

This written communication left no room for doubt about notice of the union's position.

Therefore, even assuming the statute of limitations did not begin to run until Local 609 provided the appellants with written notice, and even assuming that written notice was not adequately provided until October 18, 2013, the appellants' action is still untimely. The appellants filed their complaints on May 29, 2014. At the very least, the appellants' complaints were filed over a month after the expiration of the six month statute of limitations period.[11]

---

[9] The second September 17 communication referenced in the October 16 letter is a voicemail from Hammack.

[10] This letter told Hammack that she had known since September 17, 2013 that Local 609 had decided to accept SPS's offer to settle the two grievances. And, that the appellants were notified on that date that whether or not they agreed with the settlement, Local 609 had agreed to the settlement and would not proceed to arbitration.

[11] By October 18, 2013, Local 609 had already engaged in all of the allegedly improper legal advice. Therefore, to the extent the appellants had viable DFR causes of action against the union based on earlier "unauthorized"

Finally, the appellants assert that the statute of limitations is subject to tolling based on a provision in the CBA. And, the appellants assert that even if the statute of limitations in this case ran, equitable tolling and/or estoppel applies here. The appellants base these arguments on the contention that Local 609's actions in pursuing their grievances were contradictory. And, that they were never provided with any written notices of any deadlines or the outcome of their grievances despite repeated requests. Again, the appellants cite to no authority to support the proposition that Local 609 had to provide written notice of its decision about the grievances. And, Barnard's October 18 letter unequivocally reiterated that Local 609 would not be pursuing arbitration. Therefore, we reject the appellants' arguments regarding tolling.

We affirm.

WE CONCUR:

---

legal advice, the statute of limitations for those claims would also have certainly expired prior to the filing of the appellants' complaints.