

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE ___OCT 1 2 2017___

_Fairhurst, CJ._

_CHIEF JUSTICE_

This opinion was filed for record

at __8:00 am__ on __Oct 12, 2017__

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROLAND KILLIAN, | ) |
| Petitioner, | ) No. 93655-2 |
| v. | ) |
| SEATTLE PUBLIC SCHOOLS, a municipal corporation, | ) |
| Defendant, | ) |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 609-A, | ) |
| Respondent. | ) En Banc |
| DENNIS BAILEY and DEBRA BAILEY, | ) |
| Petitioners, | ) |
| v. | ) |
| SEATTLE PUBLIC SCHOOLS, a municipal corporation, | ) |
| Defendant, | ) |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 609-A, | ) |
| Respondent. | ) Filed __OCT 1 2 2017__ |

MADSEN, J.—Former Seattle Public Schools (SPS) employees Roland Killian and Dennis Bailey (petitioners) seek reversal of a published Court of Appeals decision. In that decision, the Court of Appeals affirmed the trial court's summary judgment ruling in favor of petitioners' bargaining representative, International Union of Operating Engineers Local 609-A (IUOE). There are two issues in the case: (1) whether petitioners' negligent and unauthorized practice of law and Consumer Protection Act (CPA) (ch. 19.86 RCW) claims against IUOE are subsumed within their claims that IUOE breached its duty of fair representation (DFR) and (2) whether the six-month statute of limitations for unfair labor practices brought before the Public Employment Relations Commission (PERC) applies to petitioners' claims that they brought in superior court.

We hold that the claims arising out of IUOE's representation are subsumed into a DFR claim against IUOE and that the six-month statute of limitations found in RCW 41.56.160(1) and RCW 41.80.120(1) does not apply to unfair labor practices filed in superior court because those statutes refer only to those claims filed with PERC. Therefore, the trial court erred in granting summary judgment because petitioners' claims were timely. We reverse the Court of Appeals.

## FACTS

Petitioners were employed as grounds workers for SPS. Killian was a grounds foreman, supervising school grounds personnel, and Bailey was a grounds worker. Both were members of IUOE, which is the collective bargaining unit for SPS employees,

including grounds workers. On September 7, 2011, SPS sent petitioners letters informing them that SPS was placing them on administrative leave based on allegations that they misused SPS resources. SPS learned of this alleged misuse from another employee. That employee alleged petitioners used SPS tools and the SPS vehicle during work hours to conduct a side business of gardening and landscaping for private customers.

On December 18, 2012, SPS informed petitioners that proper cause existed to terminate their employment for misconduct. The termination was effective December 27, 2012. IUOE filed grievances on behalf of petitioners, alleging that SPS disciplined them without just cause or progressive discipline in violation of the collective bargaining agreement (CBA). Michael McBee served as petitioners' union representative. McBee is not an attorney. Petitioners retained outside counsel to represent them in their unlawful discrimination and retaliation claims against the district.

SPS denied the grievances at steps 1, 2, and 3 of the grievance process (on February 5, 2013, February 28, 2013, and March 29, 2013), so McBee proposed mediation. On June 13, 2013, SPS and IUOE filed a joint grievance mediation request with PERC. McBee told petitioners that mediation was meant to address only the union claims, specifically the claims for discipline without just cause or progressive discipline, and that their outside counsel was not allowed to participate or be present at mediation.

On September 17, 2013, SPS offered to extend a settlement to Killian and Bailey that would pay Killian $100,000 and Bailey $75,000 if they would agree to release all legal claims against SPS. Clerk's Papers (CP) 61-62, 172-75. After McBee informed

IUOE's executive board of the offer, the board voted to settle IUOE's grievances with SPS if SPS extended the offers to petitioners. According to McBee, he repeatedly told petitioners to discuss the settlement offers with their attorney. McBee recommended to the IUOE board that they accept SPS's offer and not proceed to arbitration. IUOE and SPS settled the union's grievance in exchange for SPS extending the offers to petitioners on September 20, 2013.

Also on September 17, 2013, petitioners' attorney, Chellie Hammack, wrote a letter to counsel for IUOE, Kathleen Barnard, summarizing discussions between the attorneys, as well as between petitioners and McBee. McBee had told petitioners that if they did not accept the offer extended, the union would not pursue arbitration on their behalf. According to Hammack, Barnard had assured her that McBee knew that no release of civil claims would or should occur without Hammack's involvement. Hammack ended her letter requesting clarification of IUOE's position, asking, "Is it the union's position that should my clients decline the offers, including releasing the civil claims, that it will not pursue arbitration and will no longer assist them by seeking reinstatement on their behalf? Please let me know in writing so that I can advise my clients of their options." CP at 136. In the letter that Barnard sent in response on October 11, 2013, she did not answer this question. Instead, she indicated that if petitioners were still in negotiations over their "public law claims," IUOE would be willing to request an extension on the grievance resolution deadline from SPS. CP at 138, 436. Barnard sent that letter the day before the membership meeting.

4

On October 12, 2013, IUOE held a regularly scheduled membership meeting that Bailey attended. At the meeting, decisions by the IUOE executive board from the previous month were read aloud, including the decision not to arbitrate petitioners' grievances. Bailey heard this announcement and told Killian. On October 14, 2013, petitioners' counsel wrote another letter to IUOE's counsel. In it, Hammack inquired as to IUOE's position given that IUOE counsel expressed a willingness to extend the grievance resolution deadline the day before it was announced that IUOE would no longer be pursuing the grievances. On October 18, 2013, Barnard responded that her earlier letter had put IUOE's position into writing, and Hammack's response acknowledged that petitioners were aware that IUOE would not pursue arbitration.

Petitioners filed suit in superior court against SPS and IUOE on May 29, 2014. The court consolidated their cases. Petitioners' allegations against SPS included unlawful discrimination in violation of RCW 49.60.180 and breach of contract for violating the CBA. SPS settled their claims with petitioners and were dismissed as defendants before IUOE moved for summary judgment. Against IUOE, petitioners alleged two claims in their complaint: breach of DFR in violation of RCW 41.56.080 and negligent and unauthorized practice of law. Petitioners later moved to amend their complaint to add a claim against IUOE under the CPA.

IUOE moved for summary judgment, alleging that all of petitioners' claims were subsumed within their DFR claim, which IUOE alleged had a statute of limitations of only six months. Because that six-month period had expired, IUOE argued that

petitioners' claims were time barred. Even assuming the date of Barnard's last letter, six months had elapsed since petitioners became aware that IUOE would not pursue arbitration. Petitioners opposed IUOE's motion for summary judgment. The court granted IUOE's motion for summary judgment based on the statute of limitations. The court also denied petitioners' motion to amend their complaint.

Division One of the Court of Appeals affirmed, holding that petitioners' other claims are subsumed into the DFR claim and the six-month statute of limitations applies. *Killian v. Int'l Union of Operating Eng'rs, Local 609-A*, 195 Wn. App. 511, 513-14, 381 P.3d 161 (2016). Thus, petitioners did not timely file their claims and the superior court properly granted summary judgment in favor of IUOE. *Id.* at 514. This court accepted review. *Killian v. Seattle Pub. Schs.*, 187 Wn.2d 1016, 388 P.3d 762 (2017).

## ANALYSIS

We review summary judgment de novo. *Allen v. State*, 118 Wn.2d 753, 757, 826 P.2d 200 (1992). We sit in the same position as the trial court below and analyze whether any genuine issues of material fact exist and whether one party is entitled to judgment as a matter of law. *Id.*; CR 56(c). We view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 803, 23 P.3d 477 (2001).

Washington's Public Employees' Collective Bargaining Act (PECBA), RCW 41.56.010-.900, "provides a cause of action for unfair labor practices, an action that a party can file with either the Public Employment Relations Commission (PERC) or a

superior court." *Wash. State Council of County & City Emps. v. Hahn*, 151 Wn.2d 163, 167, 86 P.3d 774 (2004) (citing *City of Yakima v. Int'l Ass'n of Fire Fighters*, 117 Wn.2d 655, 674-75, 818 P.2d 1076 (1991)). Washington further recognizes a duty of fair representation imposed on unions. *See Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 371-22, 670 P.2d 246 (1983). This court has noted that, federally, "[t]he duty of fair representation evolved as a judicial response to the broad power granted to unions as exclusive representatives of their members." *Id.* at 367 (citing The National Labor Relations Act (NLRA) § 9, 29 U.S.C. § 159(a) (1976)). The standard of care that unions owe their members is encapsulated by the duty of fair representation. That duty is breached "when a union's conduct is discriminatory, arbitrary, or in bad faith." *Lindsey v. Municipality of Metropolitan Seattle*, 49 Wn. App. 145, 148, 741 P.2d 575 (1987) (citing *Allen*, 100 Wn.2d at 375). Courts give great deference to a union's decisions regarding processing grievances because unions must balance the interests of the aggrieved individuals with the interests of the collective. *Id.* at 149 (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985)).

Generally, we apply the discovery rule to determine when a statute of limitations begins to run. Under that rule, "a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action: duty, breach, causation and damages." *Allen*, 118 Wn.2d at 757-58. A plaintiff must use due diligence to discover the basis for the cause of action. *Id.* at 758. The cause of action will accrue on the date that the plaintiff, through exercise of due diligence, should have discovered the

basis for the cause of action, even if actual discovery did not occur until later. *Id.* "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action." *Id.*

### Petitioners' negligent and unauthorized practice of law and CPA claims are subsumed in their DFR claim

The first issue in this case examines the type of claim petitioners are raising against the union. Specifically, the issue is whether petitioners' claims against IUOE for conduct arising from IUOE's representation of petitioners in the collective bargaining process are subsumed in the DFR claim. The federal courts, which we look to for guidance when the NLRA is similar to the PECBA, have found that claims arising out of the union's representation are subsumed in a DFR claim.

*Peterson* is the leading case from the federal courts. In that case, Peterson's breach of duty claim was based on allegations that the union, through its attorney representatives, erroneously advised him to file an injury grievance. 771 F.2d at 1252. Peterson sued the union and two of its attorneys. But the Ninth Circuit held that the malpractice claims against the union attorneys were subsumed in the DFR claim against the union. *Id.* at 1256. According to the Ninth Circuit, "sound policy reasons as well as established precedent compel the conclusion that attorneys who perform services for and on behalf of a union may not be held liable in malpractice to individual grievants where the services the attorneys perform constitute a part of the collective bargaining process." *Id.* Citing to *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S. Ct. 1318, 8 L. Ed. 2d 462 (1962), the court highlighted that it has long been recognized that union officers and

employees are not individually liable for acts they perform as representatives of the union in the collective bargaining process. *Id.*

Peterson argued that the court should create an exception to the *Atkinson* rule for union employees who happen to be attorneys. *Id.* at 1257. But the court declined to do so. The court emphasized that when the union is providing services in the collective bargaining process, it is the union, not the individual agent or attorney, that represents and is ultimately responsible to the member. *Id.* at 1258. *Peterson* further stated that liability for individual conduct could arise outside of the DFR if the services that the attorney provides are "wholly unrelated to the collective bargaining process," such as drafting a will, handling a divorce, or litigating a personal injury suit. *Id.* at 1259. Finally, the *Peterson* court emphasized that policy reasons supported its decision to hold that union attorneys are not subject to malpractice liability for collective bargaining activity. First, negligence is the essence of a malpractice action, but negligence is insufficient to support a breach of DFR. Thus, certain union employees—namely, attorneys—would be held to a higher standard than the union itself. *Id.* Second, permitting such malpractice actions would allow litigants to proceed against a union long after the expiration of the statute of limitations for suits against the union for DFR. *Id.*

Like in *Peterson*, McBee was acting as an agent of the union, providing services in the collective bargaining process. Petitioners argue that the protection of *Peterson* should not apply because they allege that McBee acted outside of the scope of the CBA. But, even viewing the evidence in the light most favorable to petitioners, McBee did not act

outside the scope of his role under the CBA. Petitioners assert that McBee worked to negotiate a resolution of their civil claims, but this reflects a misunderstanding of the relationship between the parties and claims in PERC mediation. McBee was there to negotiate the union's grievance. The union owns the grievance, not the individual. It was also the union's decision to pursue a grievance; petitioners could not have pursued the grievance through PERC mediation. McBee did what the CBA authorizes him to do: he negotiated a resolution to the union's grievance. IUOE agreed to settle their grievance with SPS in exchange for SPS offering the proposed settlement to petitioners. Petitioners were free to accept or reject that settlement. If they rejected the settlement, they were then free to pursue their claims against SPS in superior court, which they did. But McBee was never negotiating petitioners' individual claims because PERC mediation is not about the individual claims, it is about the union's grievances. McBee settled only the union's grievances. Therefore, petitioners can claim that McBee did not fairly represent them because the union should not have settled the union grievance in exchange for what SPS offered. But that is a DFR claim, not some other claim outside the scope of the CBA. We hold that when a union representative acts on behalf of the union in the collective bargaining process, the cause of action lies against the union itself as a DFR claim.

Our holding is consistent with how other state and federal courts have ruled. *See, e.g., Weiner v. Beatty*, 121 Nev. 243, 246-50, 116 P.3d 829 (2005) (no action against attorney provided by union because attorney is union's agent and union owes only DFR);

*Brown v. Maine State Emp'rs Ass'n*, 690 A.2d 956, 959-60 (Me. 1995) (union agents are not personally liable for actions taken in collective bargaining process; negligently missing a filing deadline is within the contours of the DFR); *Best v. Rome*, 858 F. Supp. 271, 274-76 (D. Mass. 1994) (claims against union attorney for breach of fiduciary duty, malpractice, intentional infliction of emotional distress, and state law governing union representative conduct are subsumed into DFR claim against union, despite no express immunity in state law), *aff'd*, 47 F.3d 1156 (1st Cir. 1995); *Hussey v. Operating Eng'rs Local Union No. 3*, 35 Cal. App. 4th 1213, 1219-20, 42 Cal. Rptr. 2d 389 (1995) (analyzing claims against union and agent for negligence, breach of fiduciary duty, and negligent infliction of emotional distress as DFR claim).

Because we find that petitioners' negligent and unauthorized practice of law and CPA claims are subsumed in their DFR claim against IUOE, we do not address the merits of either of those claims.

### The six-month statutes of limitation in RCW 41.56.160(1) and RCW 41.80.120(1) do not apply to unfair labor practice claims filed in superior court

The second issue in this case is whether petitioners timely filed their claims. IUOE moved for summary judgment based on the statute of limitations, and that is the ground on which the trial court granted summary judgment. Based on the plain language of the statutes, we hold that the six-month statutes of limitation in RCW 41.56.160(1) and RCW 41.80.120(1) do not apply to petitioners' claims because they filed the claims in superior court. And under the applicable statute of limitations, petitioners timely filed

their claims. Therefore, the trial court erred in granting summary judgment on that ground.

IUOE argues, as it did successfully in the Court of Appeals, that the six-month statutes of limitation found in RCW 41.56.160(1) and RCW 41.80.120(1) apply to bar petitioners' claims. RCW 41.56.160(1) and RCW 41.80.120(1) provide:

> The commission is empowered and directed to prevent any unfair labor practice and to issue appropriate remedial orders: PROVIDED, That a complaint shall not be processed for any unfair labor practice occurring more than six months before the filing of the complaint with the commission. This power shall not be affected or impaired by any means of adjustment, mediation or conciliation in labor disputes that have been or may hereafter be established by law.[1]

The statutes thus set a six-month limitation for unfair labor practice claims[2] filed with PERC. But the statutes do not refer to unfair labor practice claims filed in superior court.

We have recognized that PERC has both expertise and authority to rule on unfair labor complaints, but "this expertise and authority do not divest the superior courts of jurisdiction in all cases to resolve unfair labor practice complaints which involve interpretation of public employee collective bargaining statutes." *City of Yakima*, 117 Wn.2d at 675. When the legislature expresses one thing in a statute, we infer that omissions are exclusions. *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597

---

[1] Chapter 41.56 RCW applies to public employees' collective bargaining, whereas chapter 41.80 RCW refers to state collective bargaining. The text of RCW 41.56.160(1) and RCW 41.80.120(1) is identical.

[2] "The NLRB has consistently held that all breaches of a union's duty of fair representation *are* in fact unfair labor practices." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983). None of the parties appears to dispute that DFR claims are unfair labor practice claims. So we assume, without deciding, that they are.

(2002) (citing *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 571, 980 P.2d 1234 (1999); *State v. Williams*, 29 Wn. App. 86, 91, 627 P.2d 581 (1981)). If the legislature intended for the statutes of limitation set forth in RCW 41.56.160(1) and RCW 41.80.120(1) to apply to claims filed both with PERC and in superior court, it would not have included only those complaints filed "with the commission." The plain language of these statutes dictates that they apply only to claims filed with PERC, and we will not read additional language into a statute that the legislature did not write. Rather than assuming that RCW 41.56.160(1) and RCW 41.80.120(1) limit the superior court's power to hear unfair labor practice claims, we hold that the statutes do what the plain language says: authorize PERC to hear unfair labor practice claims, so long as those claims are not older than six months.

In *Imperato v. Wenatchee Valley College*, Division Three of the Court of Appeals addressed the statute of limitations question that this case raises. 160 Wn. App. 353, 247 P.3d 816 (2011), *review denied*, 171 Wn.2d 1033, 257 P.3d 664 (2011). There, the Court of Appeals held that the applicable statute of limitations for the breach of contract and DFR claim is six months. *Id.* at 356. Because the plaintiff filed his claims in superior court more than six months after the union declined to file a grievance, the superior court properly granted the union's motion for summary judgment based on the statute of limitations. *Id.* To reach this conclusion, the Court of Appeals first found that Imperato's claim for breach of contract and DFR was an unfair labor practice claim, relying on this court's decisions in *Allen*, 100 Wn.2d at 371-72, and *Wright v. Terrell*,

162 Wn.2d 192, 196, 170 P.3d 570 (2007). *Imperato*, 160 Wn. App. at 359-60. As an unfair labor practice claim, RCW 41.56.160(1) and 41.80.120(1) set forth a six-month statute of limitations. *Id.* at 360-61. Imperato also argued that the statutes outlining the six-month period are directed only at claims filed with PERC, which should not apply to claims filed in superior court. The Court of Appeals rejected this argument and found that the six-month statute of limitations applies whether filed with PERC or in the superior court. *Id.* at 361. Although the Court of Appeals recognized that the plain language of the statutes applies only to claims filed with PERC and the statutes are silent as to claims filed in superior court, it nonetheless relied on policy and context to conclude that the six-month period also applies to claims filed in superior court. *Id.* at 361-63. According to the Court of Appeals, applying the six-month limitation would prevent piecemeal litigation, impose a greater degree of certainty and fairness to the process, align with the role of PERC in promptly adjudicating and resolving labor disputes, and be consistent with federal law. *Id.* at 364. We reject *Imperato* because it departs from the plain language of RCW 41.56.160(1) and RCW 41.80.120(1).

Further, the policy rationales on which *Imperato* and the Court of Appeals in this case rely are overstated. Echoing the reasoning in *Imperato*, the Court of Appeals explained that applying the six-month limitation to all DFR claims would serve several important policies: "(1) It would prevent piecemeal litigation, (2) applying a different statute of limitations to DFR claims filed in superior court would frustrate the role of PERC in promptly resolving labor disputes, and (3) it would provide consistency,

14

because federal law also establishes a six month statute of limitations." *Killian*, 195 Wn. App. at 523 (citing *Imperato*, 160 Wn. App. at 364).

Applying the six-month limitation would not necessarily prevent piecemeal litigation because such litigation can be inevitable in cases like this. PERC has jurisdiction to hear only unfair labor practice claims. RCW 41.80.120(1). Actions by employers and employee organizations that are "unfair labor practices" are enumerated by statute. *See* RCW 41.80.110(1), (2) (defining "unfair labor practice[s]"). Not all of petitioners' claims could have been brought before PERC. For example, petitioners alleged unlawful discrimination against SPS in violation of RCW 49.60.180, a claim not included in RCW 41.80.110. CP at 9, 981.

Similarly, petitioners could not have filed their DFR claims against IUOE with PERC. PERC has jurisdiction over unfair labor practices, but it does not assert jurisdiction in DFR cases arising from the union's actions in processing a claim under a CBA. *James v. Amalg. Transit Union Local 1765*, Decision 12172, 2014 WL 5149996 (Wash. Pub. Emp't Relations Comm'n Oct 1, 2014). PERC asserts jurisdiction in DFR cases only when an employee alleges that the union has aligned itself in interest against the employees based on invidious discrimination. *Id.* (citing *Heitman v. Seattle Police Officers' Guild*, Decision 11291-A, 2012 WL 2885472 (Wash. Pub. Emp't Relations Comm'n July 11, 2012)). Petitioners' DFR claims arise from IUOE's processing of their claims under the CBA and not invidious discrimination.

15

We also doubt that applying a longer limitation period to claims filed in superior court would undermine PERC's role in promptly resolving labor disputes. PERC still operates with the six-month limitation. And unions, employers, and individual employees remain free to take advantage of the quick process that PERC offers for resolving unfair labor disputes. Simply because there are two paths of dispute resolution, which we have said coexist, does not mean that one undermines the other. PERC will maintain its role in promptly resolving unfair labor practice disputes even if the process in superior court operates on a different timeline.

Additionally, there are sound reasons to depart from the federal law on this issue. Under the NLRA, the National Labor Relations Board (NLRB) has authority to hear unfair labor practice complaints provided that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the [NLRB]." 29 U.S.C. § 160(b). And the United States Supreme Court has expanded that limitation to claims not filed with the NLRB. In *DelCostello v. International Brotherhood of Teamsters*, the Court held that the six-month limitation from the NLRA applies to what they call "hybrid claims." 462 U.S. 151, 165-71, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983). Hybrid claims are those in which a plaintiff files suit in district court against a union for breach of DFR and against the employer for breach of contract based on the CBA. The Court in *DelCostello* highlighted the need for uniformity of procedure for similar claims and the national interest in stable bargaining relationships. *Id.* at 171; *see also Peterson*, 771 F.2d at 1259 (describing *DelCostello* as bringing "rationality and

16

symmetry" with respect to the timing for claims by union members that their grievances were mishandled).

Unlike PERC, however, the NLRB asserts jurisdiction to hear DFR claims arising from the union's actions in processing a claim under a CBA. *See, e.g., DelCostello*, 462 U.S. at 170 (citing *Miranda Fuel Co.*, 140 N.L.R.B. 181 (1962), *enforcement denied*, 326 F.2d 172 (2d Cir. 1963)); *Steamfitters Local Union No. 342*, 336 N.L.R.B. 549, 550-51 (2001). We look to how the federal courts have interpreted NLRA provisions when they are substantially similar to our PECBA provisions. Even then, such decisions are persuasive, not controlling. *See Allen*, 100 Wn.2d at 372. But where NLRA and PECBA practices are not similar, consistency with federal law is not a persuasive policy rationale—particularly here, where such a policy rationale is proffered to justify departing from the plain language of RCW 41.56.160(1) and RCW 41.80.120(1). We decline to place a greater emphasis on the federal courts' interpretation of a dissimilar system than the plain language of our state statutes.

Nor can we stray from the legislature's plain language for policy reasons alone. We look first to the plain language of a statute, and if that language is unambiguous, our inquiry ends. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007) (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). In this case, RCW 41.56.160(1) and RCW 41.80.120(1) include references only to claims filed with PERC. The legislature expressly omitted such claims filed in superior court. We must give effect to that plain meaning.

Because we hold that the six-month limitation does not apply to petitioners' unfair labor practice claims filed in superior court, we must determine what statute of limitations applies. Petitioners argue that we should apply RCW 4.16.130 to their DFR claims, which provides, "An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued." We agree that this two year statute of limitation applies. Although the parties dispute when petitioners became aware of IUOE's decision not to proceed to arbitration, petitioners filed this suit within two years of any of the possible dates. Thus, petitioners' claims were timely and the superior court erred in granting summary judgment on that ground.

## CONCLUSION

We reverse the Court of Appeals and hold that claims against unions for the actions of their representatives in the collective bargaining process are subsumed in a DFR claim. We further hold that the plain language of RCW 41.56.160(1) and RCW 41.80.120(1) dictates that the six-month statute of limitations applies only to claims filed with PERC, not those filed in superior court. Therefore, the two year catchall statute of limitations found in RCW 4.16.130 should apply to unfair labor practice claims filed in superior court. Therefore, petitioners' timely filed their claims and the superior court erred in granting summary judgment based on the statute of limitations.

No. 93655-2

_Madsen, J._

WE CONCUR:

_Wiggins, J._

_González, J._

_Owens, J._

_Stephens, J._

_Yu, J._

No. 93655-2

FAIRHURST, C.J. (concurring)—I agree with the majority's result in this case, but I write separately because I would narrow the holding with regard to the applicable statute of limitations. The six month statute of limitations is inapplicable to Roland Killian and Dennis Bailey's duty of fair representation (DFR) claim because they could not have filed the claim with the Public Employment Relations Commission (PERC) for lack of jurisdiction. Therefore, the two year statute of limitations applies to this claim and the trial court erred in granting summary judgment.

PERC lacks jurisdiction over Killian and Bailey's claim because it does not involve a statutory right. PERC has limited jurisdiction to prevent unfair labor practices and issue appropriate remedial orders. RCW 41.56.160. It is settled law that this limited jurisdiction applies only when unfair labor practices affect statutory rights. *Local 2916, IAFF v. Pub. Emp't Relations Comm'n*, 128 Wn.2d 375, 376, 907 P.2d 1204 (1995). The duty of fair representation is a judicially imposed standard, not a statutory right. *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d

1

361, 367-75, 670 P.2d 246 (1983).[1] Thus, PERC has jurisdiction over DFR claims only if the claim affects a statutory right. *Local 2916, IAFF*, 128 Wn.2d at 383 (concluding that PERC has "no authority to decide whether an act is an unfair labor practice unless the right that is affected is guaranteed by statute").[2] So only in "rare circumstances" does PERC assert jurisdiction over DFR claims, such as when an employee alleges its union aligned itself against the employees it represents based on invidious discrimination. *James v. Amalg. Transit Union Local 1765*, Decision 12172, 2014 WL 5149996, at *1 (Wash. Pub. Emp't Relations Comm'n Oct. 1, 2014) (citing *Heitman v. Seattle Police Officers' Guild*, Decision 11291-A, 2012 WL 2885472, at *3 (Wash. Pub. Emp't Relations Comm'n July 11, 2012)). Because Killian and Bailey's DFR claim does not affect a statutory right, PERC lacks jurisdiction.

Because PERC does not have jurisdiction over Killian and Bailey's DFR claim, the six month statute of limitations in RCW 41.56.160(1) and 41.80.120(1) does not apply. The two year statute of limitations in RCW 4.16.130 applies. It is

---

[1] The court decided to apply the doctrine of DFR to unions certified under RCW 41.56.080, then proceeded to craft "our own guidelines" for what constitutes a breach of this duty, leaving further development of the doctrine to be decided in subsequent cases by the judicial branch. *Allen*, 100 Wn.2d at 374.

[2] For example, DFR claims affect statutory rights when the bargaining representative engages in a prohibited unfair labor practice as enumerated in RCW 41.56.150.

unnecessary to answer the broader question of what statute of limitations applies to

claims that could properly be filed in either PERC or superior court.

*Killian v. Int'l Union of Operating Eng'rs*, No. 93655-2
Fairhurst, C.J. (concurring)

Fairhurst, C.J.

4

No. 93655-2

GORDON McCLOUD, J. (dissenting in part)—I agree with the majority's

resolution of the first issue presented in this case: the petitioners' negligent and

unauthorized practice of law and Consumer Protection Act[1] claims are subsumed

within their duty of fair representation (DFR) claim. I therefore concur in that

holding, which is consistent with relevant precedent from around the country. *See*

majority at 8-11. I disagree with the majority's other holding, however, regarding

the statute of limitations applicable to petitioners' claims.

On that question, the Court of Appeals in this case followed *Imperato v.*

*Wenatchee Valley College*, 160 Wn. App. 353, 247 P.3d 816 (2011),[2] a well-

reasoned decision on which parties to collective bargaining disputes have relied for

years. Consistent with *Imperato*, the Court of Appeals held that the petitioners'

---

[1] Ch. 19.86 RCW.

[2] *Killian v. Int'l Union of Operating Eng'rs, Local 609-A*, 195 Wn. App. 511, 522-24, 381 P. 3d 161 (2016) (citing *Imperato*, 160 Wn. App. at 356-64).

1

claims were subject to the six-month statute of limitations in RCW 41.56.160, even though that statute's express terms govern only complaints filed with the Public Employee Relations Commission (PERC). *Killian v. Int'l Union of Operating Eng'rs, Local 609-A*, 195 Wn. App. 511, 522-24, 381 P. 3d 161 (2016).[3] The majority reverses that holding, concluding instead that the two-year catchall statute of limitations codified at RCW 4.16.130 should apply because the petitioners filed their DFR claim in superior court. In doing so, the majority overturns *Imperato*, minimizes the policy concerns underlying that decision, and departs from decades of precedent interpreting Washington's Public Employees' Collective Bargaining Act's (PECBA) provisions consistent with similar provisions in the National Labor Relations Act (NLRA) § 9, 29 U.S.C. § 159(a).

---

[3] RCW 41.56.160(1) provides, "The commission is empowered and directed to prevent any unfair labor practice and to issue appropriate remedial orders: PROVIDED, That a complaint shall not be processed for any unfair labor practice occurring more than six months before the filing of the complaint with the commission. This power shall not be affected or impaired by any means of adjustment, mediation, or conciliation in labor disputes that have been or may hereafter be established by law." The petitioners do not dispute that a claim for breach of the DFR is a claim for an "unfair labor practice." *See* RCW 41.56.150(1) (defining "unfair labor practice" as including actions that "interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by this chapter"); *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 371, 670 P.2d 246 (1983) (holding that the DFR is a right guaranteed by RCW 41.56.080).

2

I believe *Imperato* was correctly decided and would therefore affirm the Court of Appeals' decision on the statute of limitations issue in this case. On that issue, I respectfully dissent.

A. The *Imperato* Decision Is Well Reasoned and Consistent with Our Legislature's Intent

Our legislature enacted PECBA in 1967[4] in order to fill a gap in collective bargaining law. At that time, the NLRA had long protected private sector employees from unfair labor practices[5] but had never applied to public employment.[6] PECBA addressed that discrepancy by extending NLRA-type protections to public sector employees like the petitioners in this case. Indeed, many of PECBA's provisions are clearly based on the NLRA.

Like an NLRA unfair labor practices claim, a PECBA claim does not sound in tort; instead, it is a special cause of action created by chapter 41.56 RCW.[7] Thus,

---

[4] LAWS OF 1967, Ex. Sess., ch. 108, § 7.

[5] *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 239-46, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959) (discussing history of unfair labor practice claims brought under NLRA, distinguishing these claims from common law tort claims, and holding that National Labor Relations Board (NLRB) has exclusive jurisdiction over unfair labor practice claims).

[6] *Aramark Corp. v. Nat'l Labor Relations Bd.*, 179 F.3d 872, 874 (10th Cir. 1999) (NLRA expressly exempts government entities from NLRB jurisdiction (quoting NLRA § 2(2), 29 U.S.C. § 152(2) (defining covered "'employer[s]'" to exclude, among other entities, "any State or political subdivision thereof"))).

3

in Washington, a public employee's claim for unfair labor practices did not exist until 1969—and neither did the six-month statute of limitations applicable to such claims under RCW 41.56.160. The 1969 enactment created the claim and the limitations period simultaneously. LAWS OF 1969, Ex. Sess., ch. 215, § 3 (empowering PERC to prevent and remediate unfair labor practices subject to the six-month limitations period); LAWS OF 1969, Ex. Sess., ch. 215, § 1 (defining "unfair labor practice [by] a public employer"); LAWS OF 1969, Ex. Sess., ch. 215, § 2 (defining "unfair labor practice [by] a bargaining representative").

As the majority notes, PECBA does not divest superior courts of any jurisdiction, majority at 12, and for this reason an aggrieved employee can bring a PECBA claim in superior court as well as before PERC. *State ex rel. Graham v. Northshore Sch. Dist. No. 417*, 99 Wn.2d 232, 240, 662 P.2d 38 (1983)). But this creates the potential for conflicts, so we have developed the "priority of action rule," under which the superior court is precluded from ruling on any issue in a case already pending before PERC (where the two cases are identical as to issues, parties, and relief). *City of Yakima v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 469*, 117 Wn.2d 655, 675-76, 818 P.2d 1076 (1991) (citing *Sherwin v. Arveson*, 96 Wn.2d 77,

---

[7] *Wright v. Terrell*, 162 Wn.2d 192, 196, 170 P.3d 570 (2007) (RCW 4.96.020, which imposes special filing rules on actions for damages against all local governmental entities and their officers, employees, or volunteers, does not apply to unfair labor practice claims under chapter 41.56 RCW because such claims "are not tort claims for damages").

4

80, 633 P.2d 1335 (1981)). The purpose of this rule is to prevent "'unseemly, expensive, and dangerous conflicts of jurisdiction and of process.'" *Id.* at 675 (quoting *Sherwin*, 96 Wn.2d at 80).

The majority's holding is hard to reconcile with this rule. It is not clear why we should strive to achieve consistency between PECBA cases before PERC and PECBA cases in superior court with respect to everything except the statute of limitations.

Nor is it likely that our legislature intended that result. It is far more likely that when our legislature created PECBA's unfair labor practices claim in 1969, it simply failed to consider the fact that such claims might be filed in superior court. After all, it created the PECBA cause of action 14 years before our holding in *Graham* (recognizing superior court jurisdiction to hear PECBA claims) and more than 100 years after the enactment of the catchall statute of limitations codified at RCW 4.16.130. PECBA's silence about superior court claims must be viewed in light of this legislative history. *See State v. Evans*, 177 Wn.2d 186, 202-03, 298 P.3d 724 (2013) (because legislative history indicated amendment was intended to broaden scope of identity theft statute, court would not interpret addition of the words "living or dead" to narrow that scope by excluding corporations from class of potential victims). And in that light, RCW 41.56.160's silence does not indicate a deliberate decision to incorporate the hundred-year-old catchall statute.

5

Moreover, if our legislature *had* intended that result—if it had intended to impose one statute of limitations on PECBA claims brought before PERC and another statute of limitations on PECBA claims brought in superior court—it could have overturned *Imperato* at any point during the last six years. The fact that it has not done so is strong evidence that it believes *Imperato* was correct. *City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009) ("This court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision." (citing *Soproni v. Polygon Apt. Partners*, 137 Wn.2d 319, 327 n.3, 971 P.2d 500 (1999)). This makes sense given *Imperato*'s excellent policy reasoning.[8]

---

[8] I agree with the majority that there may be some instances in which PERC could not hear all claims relating to an employment dispute, no matter what statute of limitations applies. Thus, I agree with the majority that contrary to the *Imperato* court's reasoning, avoiding "piecemeal litigation" is not necessarily a relevant concern in interpreting PECBA. Majority at 15. But I disagree with the majority's assertion that PERC did not have jurisdiction over the petitioners' DFR claims in this case. *Id.* While PERC lacks jurisdiction to decide *contract* disputes over the meaning of a collective bargaining agreement, it does have jurisdiction to hear other allegations that a union has acted arbitrarily, in bad faith, or in a discriminatory manner toward the workers it represents. *See Heitman v. Seattle Police Officers' Guild*, Decision 11291-A, 2012 WL 2885472 (Wash. Pub. Emp't Relations Comm'n July 11, 2012) (explaining the principles underlying PERC's jurisdiction to hear DFR claims). In this case, the petitioners alleged that the defendant union acted in bad faith when it represented them. Clerk's Papers at 10, 982-83. This was not a contract dispute outside PERC's jurisdiction under the authority the majority cites.

B. The Majority's Holding Departs from Decades of Precedent Interpreting PECBA's Provisions Consistent with Similar Provisions in the NLRA

As noted above, PECBA filled a gap in collective bargaining law by giving public employees essentially the same rights, under state law, that private sector employees enjoy under the NLRA. Many of PECBA's provisions borrow language wholesale from the federal act. Accordingly, this court gives persuasive authority to federal cases interpreting NLRA provisions that are "substantially similar" to their PECBA counterparts. *Allen v. Seattle Police Officers' Guild*, 100 Wn.2d 361, 372, 670 P.2d 246 (1983).

Applying that rule, Washington courts have relied on NLRA case law to conclude that PECBA imposes the DFR on unions, *see id.* at 371-72, and that a breach of the DFR is an "unfair labor practice" under PECBA, *Imperato*, 160 Wn. App. at 358-60 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)); *Fowlkes v. Int'l Bhd. of Elec. Workers, Local No. 76*, 58 Wn. App. 759, 767-68, 795 P.2d 137 (1990) (citing numerous federal cases).[9]

---

[9] As the majority notes, Killian and Bailey do not dispute that a claim for breach of the DFR is a claim for an "unfair labor practice." Majority at 12 n.2. This is consistent with the relevant statutes and case law. *See* RCW 41.56.150(1) (defining "unfair labor practice" as including actions that "interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by this chapter"); *Allen*, 100 Wn.2d at 371 (holding that the DFR is a right guaranteed by RCW 41.56.080).

7

Just as we follow federal precedent on these DFR questions, we should follow federal precedent on the statute of limitations question presented in this case. RCW 41.56.160 is "substantially similar"[10] to NLRA § 10(b), 29 U.S.C. § 160(b), the provision the United States Supreme Court addressed in *DelCostello*, which imposes a six-month limitations period on unfair labor practice claims under that act. 462 U.S. at 169. Like RCW 41.56.160, whose express terms apply only to actions filed with PERC, NLRA § 10(b), 29 U.S.C. § 160(b) imposes an express six-month limitation only on actions filed with the National Labor Relations Board (NLRB).[11] Nevertheless, the *DelCostello* Court held that this same statute of limitations applies to NLRA/DFR actions filed in federal district court. 462 U.S. at 169-70.

---

[10] *Allen*, 100 Wn.2d at 372.

[11] *Compare* RCW 41.56.160(1) (empowering PERC to prevent and remediate "unfair labor practice[s] . . . *Provided*, That a complaint shall not be processed for any unfair labor practice occurring more than six months before the filing of the complaint with the commission"), *with* NLRA § 10(b), 29 U.S.C. § 160(b) (empowering the NLRB or "any agent or agency designated by the [NLRB] for such purposes" to prevent and remediate "unfair labor practice[s] . . . *Provided*, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the [NLRB] . . . ."). This similarity makes the NLRA "substantially similar" to PECBA for purposes of the question presented in this case. For purposes of that question, and contrary to the majority's reasoning, it is irrelevant that the NLRB may have broader jurisdiction over some collective bargaining agreement contract disputes than the PERC does. *See* majority at 17.

8

To reach that conclusion, the *DelCostello* Court had to depart from a previous rule: that district courts hearing federal labor law claims should borrow state statutes of limitations applicable to the most closely analogous claims. *Id.* at 171-72. It departed from that rule because it determined that the six-month limitations period expressly applicable to unfair labor practice claims brought before the NLRB reflected Congress' careful balancing of "'the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system.'" *Id.* at 171 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 70, 101 S. Ct. 1559, 67 L. Ed. 2d 732 (1981) (Stevens, J., concurring in part)). The *DelCostello* Court reasoned that this balance should be given effect in federal district court as well as in NLRB proceedings. *Id.*

Reaching the same conclusion about PECBA claims filed in superior court is consistent with our long-standing practice of following federal precedent on substantially similar NLRA provisions. *See Allen*, 100 Wn.2d at 367, 371-72. The *Imperato* court recognized this: it noted that RCW 41.56.160(1) "mirror[s] federal law" and it held that the policy considerations underlying the *DelCostello* decision—

9

finality and predictability—are equally compelling in the context of a PECBA claim.[12] 160 Wn. App. at 364.

The *Imperato* court also reasoned that it would not make sense to impose different statutes of limitations on unfair labor practice claims brought by public employees under PECBA and private employees under the NLRA. *Id.* ("[a]pplying a six-month statute of limitations [under RCW 41.56.160(1)] places state employees and private employees on equal footing"). This reasoning is sound. Our legislature enacted PECBA to place public employees on the same footing as private sector employees with respect to collective bargaining rights. A superior court loophole for public sector employees, allowing them to escape the six-month limitations period applicable under PECBA and the NLRA, is not consistent with that purpose.

## CONCLUSION

In this case, the Court of Appeals applied the well-reasoned holding from *Imperato* that PECBA claims must be brought within six months, no matter what forum they are brought in. That holding is consistent with long-standing precedent regarding the interpretation of PECBA's provisions. It also furthers sound policy

---

[12] The *Imperato* court adopted policy reasoning from a Michigan case, which relied in significant part on *DelCostello*, addressing an identical statute of limitations question under that state's law. 160 Wn. App. at 363-64 (citing *Meadows v. City of Detroit*, 164 Mich. App. 418, 434-35, 418 N.W.2d 100 (1987)). The Michigan *Meadows* case cited *DelCostello* for the principle that in the context of collective bargaining, relatively short statutes of limitation further the parties' interests in finality and predictability. 164 Mich. App. at 434-45 (citing *DelCostello*, 462 U.S. 151).

10

goals: promoting efficiency in the resolution of labor disputes, placing public and private sector employees on equal footing, and preventing forum shopping. The majority's decision to overturn *Imperato* departs from settled precedent and frustrates those goals. Because I do not believe that this is consistent with our legislature's intent, I respectfully dissent.